**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

| | |
|---|---|
| THOMAS EUSON, JR., Individually and For All Others Similarly Situated<br><br>v.<br><br>TRC ENGINEERS, LLC | Civil Case No. <u>5:24-cv-1168</u> (GTS/TWD)<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action<br>FLSA Collective Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Thomas Euson, Jr. ("Euson") brings this class and collective action to recover untimely wages, unpaid overtime wages, and other damages from TRC Engineers, LLC ("TRC").

2. TRC is an engineering services provider that employs numerous people in New York State, a majority of whom are "manual workers" as contemplated by § 191 of the New York Labor Law ("NYLL").

3. For example, TRC employed Euson as one of the Hourly Technicians (defined below) in and around Onondaga County, New York.

4. Despite being manual workers, TRC fails to properly pay Euson and the other Hourly Technicians their wages within seven calendar days after the end of the week in which they earned such wages.

5. Instead, TRC uniformly pays Euson and the other Hourly Technicians on a bi-weekly basis.

6. In this regard, TRC failed to timely pay earned wages to Euson and the other Hourly Technicians.

7. As manual workers, Euson and the other Hourly Technicians are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

8.    Accordingly, TRC's failure to timely pay wages owed to Euson and the other Hourly Technicians constitutes an "especially acute injury" under NYLL § 191. *See Caul v. Petco Animal Supplies, Inc.,* No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC,* 175 A.D.3d 1144, 1146 [N.Y. 1st Dept. 2019]).

9.    Additionally, TRC does not pay Euson and the other Hourly Technicians for all the hours they work.

10.    Instead, TRC requires Euson and the other Hourly Technicians to unload electronic and photography equipment from their vehicles each evening, bring that equipment into their residences, charge the equipment in their residences each night, and load the equipment back into their vehicles each morning (TRC's "equipment charging policy").

11.    This takes Euson and the other Hourly Technicians 5 to 10 minutes before their shifts each workday and 5-10 minutes after their shifts each workday "off the clock."

12.    They are thus not paid for this time.

13.    TRC's equipment charging policy violates the Fair Labor Standards Act (FLSA) and NYLL by depriving Euson and the other Hourly Technicians of overtime compensation for hours worked in excess of 40 each workweek.

## JURISDICTION & VENUE

14.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15.    This Court also has supplemental jurisdiction over the state-law class claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16.    Additionally, this Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

17.     Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of Euson's proposed class of Hourly Technicians and TRC are citizens of different states (indeed, Euson is a New York citizen, whereas TRC is a Maine citizen); and (c) the proposed class of Hourly Technicians exceeds 100 members.

18.     This Court has specific personal jurisdiction over TRC with respect to this action because TRC employed Euson and the other Hourly Technicians in New York.

19.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

20.     Specifically, TRC employed Euson in and around Onondaga County, New York, which is in this District and Division.

PARTIES

21.     TRC employed Euson as a powerline technician from approximately September 2022 until November 2023.

22.     Throughout his employment, TRC classified Euson as non-exempt and paid him by the hour.

23.     TRC paid Euson on a bi-weekly basis.

24.     Throughout his employment, TRC subjected Euson to its equipment charging policy.

25.     TRC failed to pay Euson for his hours worked loading, unloading, and charging equipment.

26.     Euson brings this class and collective action on behalf of himself and other similarly situated Hourly Technicians whom TRC subjected to its equipment charging policy and/or failed to timely pay their earned wages.

27.     The putative FLSA collective of similarly situated employees is defined as:

**All employees who worked for TRC as hourly powerline technicians and similar employees who were subject to TRC's**

equipment charging policy during the past 3 years. (the "FLSA Collective Members").

28.    The putative New York class of similarly situated employees is defined as:

All employees who worked for TRC in New York as hourly powerline technicians and similar employees who were paid on a bi-weekly basis during the past 6 years and 228 days[1] (the "New York Class Members").

29.    The FLSA Collective Members and New York Class Members are collectively referred to as the "Hourly Technicians."

30.    The Hourly Technicians can be readily ascertained from TRC's business and personnel records.

31.    TRC is a Maine limited liability company headquartered in Augusta, Maine.

32.    TRC may be served through its registered agent: **C T Corporation System, 3 Chase Avenue, Augusta, Maine 04330.**

## COVERAGE UNDER THE FLSA

33.    At all relevant times, TRC has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

34.    At all relevant times, TRC has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r)(2)(A).

35.    At all relevant times, TRC has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because TRC is engaged in the

---

[1] This class period is due to Governor Cuomo's Executive Orders that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for a total of 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

provision of engineering services related to transmission and distribution lines. 29 U.S.C. § 203(s)(1)(B).

36.     At all relevant times, TRC has had an annual gross volume of sales made or business done of at least $1,000,000.

37.     At all relevant times, TRC has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cellphones, computers, tablets, personal protective equipment, etc. – that have been moved in or produced for commerce.

38.     At all relevant times, Euson and the other FLSA Collective Members have been TRC's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e)(1).

39.     At all relevant times, Euson and the other FLSA Collective Members were engaged in commerce or in the production of goods for commerce.

40.     TRC requires Euson and the other FLSA Collective Members to load, unload, and charge work equipment "off the clock" without compensation under its equipment charging policy.

41.     As a result, TRC fails to pay Euson and the FLSA Collective Members for all hours worked.

42.     TRC's equipment charging policy deprives Euson and the other FLSA Collective Members of overtime compensation during workweeks they work over 40 hours. 29 U.S.C. § 207(a) & (e).

43.     As a result, TRC fails to pay Euson and the FLSA Collective Members overtime wages at rates not less than 1.5 times their regular rates of pay, for all hours worked in excess of 40 a workweek, in willful violation of the FLSA.

## FACTS

44.     TRC provides engineering services related to energy infrastructure.

45.     To meet its business objectives, TRC employs workers like Euson and the other Hourly Technicians.

46.     While exact job duties and precise locations worked may differ, Euson and the other Hourly Technicians are all subjected to TRC's same or similar policies, while performing similar work.

47.     For example, Euson worked for TRC as a powerline technician from approximately September 2022 until November 2023 in and around Onondaga County, New York.

48.     Throughout his employment, TRC classified Euson as non-exempt and paid him by the hour.

49.     TRC paid Euson approximately $22.05 an hour.

50.     Euson worked approximately 10 to 12 hours a day for 5 days a week (50 to 60 hours a workweek).

51.     For example, during the bi-weekly pay period ending October 13, 2023, Euson worked a total of 102 hours:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 21.0000 | 80.00 | 1,680.00 | 33,360.60 |
| Overtime | 31.5000 | 22.00 | 693.00 | 6,567.75 |
| Bonus | | | | 150.00 |
| Pto | | | | 2,108.40 |
| **Gross Pay** | | | **$2,373.00** | 42,186.75 |

52.     Throughout his employment, over 25% of Euson's duties were physical tasks, including but not limited to: walking, loading and unloading photography and measuring equipment, moving, positioning, and setting up specialized photography equipment and photographing numerous transmission line poles, measuring transmission and distribution line heights with a specialized measuring stick by hooking the measuring stick along various points of the transmission lines, and standing or otherwise being "on his feet" for extended periods of time.

53.     Despite regularly spending more than 25% of his shifts performing physical tasks, TRC failed to timely pay Euson his earned wages.

54.     Instead, TRC paid Euson on a bi-weekly basis.

55.     As a result of TRC's untimely wage payments, TRC has underpaid Euson for the first seven days of each bi-weekly pay period throughout his employment.

56.     For example, TRC paid Euson on October 19, 2023 for manual work he performed during the September 30 to October 19, 2023 bi-weekly pay period:




57.     Thus, TRC failed to timely pay Euson his wages earned not later than seven days after he earned such wages, as required by NYLL § 191(1)(a), for every other week beginning September 2022, through the termination of his employment in November 2023.

58.     As a result of TRC's untimely wage payments, TRC underpaid Euson every other week across this entire period.

59.     TRC's underpayments denied Euson the time-value of his earned wages. *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, --- F. Supp. 3d. ---, 2023 WL 4457911, at *7 (W.D.N.Y. July 11, 2023) (holding an employee's "lost time value of his wages" from being paid late was an injury in fact).

60.     For example, Euson was unable to invest, save, or purchase utilizing the wages he earned during the first seven days of each bi-weekly pay period throughout his employment.

61.     TRC subjects the other Hourly Technicians to the same policies it imposes on Euson.

62.     Indeed, the other Hourly Technicians perform the same or similar physical job duties as Euson.

63.    Over 25% of the other Hourly Technicians' daily job duties are the same or similar physical tasks that Euson performs.

64.    But like Euson, despite regularly spending more than 25% of their shifts performing these physical tasks, TRC fails to timely pay its other Hourly Technicians their earned wages.

65.    Instead, like Euson, TRC pays the other Hourly Technicians on a bi-weekly basis.

66.    As a result of its untimely wage payments, TRC likewise underpays the other Hourly Technicians for the first seven days of each bi-weekly pay period.

67.    Thus, like Euson, TRC pays its other Hourly Technicians on an untimely basis, in willful violation of the NYLL.

68.    And TRC's underpayments similarly deny the other Hourly Technicians the time-value of their money, as they are unable to invest, save, or purchase utilizing the wages they earned and are owed during each underpaid workweek.

69.    And like Euson, the other Hourly Technicians work approximately 50 to 60 hours a workweek.

70.    And TRC subjects Euson and the other Hourly Technicians to its equipment charging policy, requiring them to load and unload equipment from their vehicles before and after their shifts and charge equipment in their residences each evening.

71.    Specifically, TRC requires Euson and the other Hourly Technicians to load and unload specialized photography and GPS equipment known as an IKE Machine, and accompanying equipment such as batteries, tripods, protective case, tablet, etc. and to charge this equipment in their homes each evening, "off the clock" and without compensation.

72.    These tasks take Euson and the other Hourly Technicians 5 to 10 minutes before their shifts and 5 to 10 minutes after their shifts each workday.

73.     TRC fails to exercise its duty to ensure Euson and the other Hourly Technicians are not performing work that TRC does not want performed "off the clock" before and after their shifts.

74.     Despite accepting the benefits, TRC does not pay Euson for the compensable work they perform under its equipment charging policy.

75.     But Euson and the other Hourly Technicians could not perform the job duties TRC hired them to do – photographing and measuring transmission lines – without charging their equipment each day, while it is not in use.

76.     Therefore, this work is integral and indispensable to Euson's and the other Hourly Technician's principal activities on behalf of TRC.

77.     Thus, under TRC's equipment charging policy, Euson and the other Hourly Technicians are denied overtime compensation in workweeks they work over 40 hours.

78.     TRC knows Euson and the other Hourly Technicians routinely perform work "off the clock" before and after their shifts charging equipment because TRC expects and requires them to do so.

79.     But TRC does not pay Euson and the other Hourly Technicians for this routine "off the clock" work, including hours worked in excess of 40 hours in a workweek, in willful violation of the FLSA and New York law.

80.     TRC therefore requires, suffers, or permits Euson and the other Hourly Technicians to perform this work "off the clock" and without compensation each workday.

**TRC's FLSA and NYLL Violations Were Willful and Done in Reckless Disregard of the FLSA and NYLL**

81.     TRC knows it is subject to the FLSA, including its overtime provisions.

82.     TRC knows it is subject to the NYLL and its supporting regulations, including the overtime provisions and timely payment of wages provisions.

83.     TRC knows the NYLL required it to pay manual workers their lawfully earned wages not later than seven calendar days after the end of the week in which such wages are earned.

84.     TRC knows Euson and the other Hourly Technicians regularly spend more than 25% of their shifts performing physical tasks.

85.     In other words, TRC knows, should have known, or recklessly disregards whether Euson and the other Hourly Technicians were "manual workers" entitled to weekly pay under the NYLL.

86.     Nonetheless, TRC does not pay Euson and the other Hourly Technicians their lawfully earned wages within seven calendar days after the end of the week in which they earned such wages.

87.     Instead, TRC pays Euson and the other Hourly Technicians on a bi-weekly basis.

88.     In other words, TRC knows, should have known, or recklessly disregards whether it failed to timely pay Euson and the other Hourly Technicians their lawfully earned wages in violation of the NYLL.

89.     TRC's failure to timely pay Euson and the other Hourly Technicians their lawfully earned wages is neither reasonable, nor is TRC's decision to pay these manual workers on a bi-weekly basis made in good faith.

90.     Further, TRC knew Euson and the other Hourly Technicians were its non-exempt employees entitled to overtime because TRC classified and paid them as such.

91.     TRC knew Euson and the other Hourly Technicians are its hourly employees because TRC pays them by the hour.

92.     TRC knew Euson and the other Hourly Technicians worked more than 40 hours in at least one workweek during the relevant period because TRC required them to record their "on the clock" hours worked using its time tracking system.

93.    TRC knew the FLSA and NYLL require it to pay Euson and the other Hourly Technicians for all hours they perform compensable work.

94.    TRC knew the FLSA and NYLL require it to pay Euson and the other Hourly Technicians overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

95.    TRC knew it required Euson and the other Hourly Technicians to load, unload, and charge equipment before and after their shifts "off the clock" under its equipment charging policy.

96.    TRC knew Euson and the other Hourly Technicians unload, charge, and load their equipment because TRC expects and requires them to.

97.    TRC knew Euson and the Hourly Technicians unloading, charging, and loading their equipment before and after their shifts each workday was integral and indispensable to the principal activities TRC hired them to perform.

98.    TRC knew Euson and the other Hourly Technicians perform compensable work during loading, unloading, and charging their equipment.

99.    Thus, TRC knew, should have known, or recklessly disregarded the fact that Euson and the other Hourly Technicians are forced to unload, charge, and load their equipment "off the clock" and without compensation.

100.    TRC knew that, as Euson's and the other Hourly Technicians' employer, it had a duty to ensure they are not performing work that TRC does not want performed before and/or after their shifts.

101.    And TRC knew Euson and the other Hourly Technicians worked more than 40 hours in at least one workweek during the relevant period.

102.    Thus, TRC knew, should have known, or recklessly disregarded the fact that it did not pay Euson and the other Hourly Technicians for all hours, including overtime hours, they perform

compensable work, including the compensable work they perform during their unpaid time spent unloading, charging, and loading equipment.

103.     In other words, TRC knew, should have known, or recklessly disregarded the fact that it failed to pay Euson and the other Hourly Technicians overtime wages for all overtime hours worked, in willful violation of the FLSA and NYLL.

104.     TRC's failure to pay Euson and the other Hourly Technicians overtime compensation for all overtime hours worked is neither reasonable, nor is the decision not to pay them overtime compensation for all overtime hours worked made in good faith.

105.     TRC knows, should have known, or recklessly disregards whether its conduct described in this Complaint violates the FLSA and NYLL.

106.     TRC knowingly, willfully, and/or with reckless disregard carried out its policies that systematically deprived Euson and the other Hourly Technicians of their lawfully earned wages in a timely manner and overtime wages, in willful violation of the FLSA and NYLL.

107.     In sum, TRC's violations of the FLSA and NYLL are willful, carried out in bad faith, and have caused significant damage to Euson and the other Hourly Technicians.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

108.     Euson brings this action as an FLSA collective action and a class action under FED. R. CIV. P. 23.

109.     Like Euson, the other Hourly Technicians are uniformly victimized by TRC's bi-weekly pay scheme and equipment charging policy.

110.     Other Hourly Technicians worked with Euson and indicated they were paid in the same manner, performed the same or similar physical work, and were subject to TRC's same bi-weekly pay scheme and equipment charging policy.

111. Based on his experience with TRC, Euson is aware TRC's practices were imposed on the other Hourly Technicians.

112. Euson and the other Hourly Technicians have all been injured in that they have been compensated in an untimely manner and failed to receive all earned wages due to TRC's common policies, practices, and patterns of conduct.

113. Indeed, TRC's company-wide policies and practices affected Euson and the other Hourly Technicians similarly.

114. And TRC benefited from the same type of unfair and/or wrongful acts as to each Hourly Technicians.

115. The putative class of Hourly Technicians includes more than 100 members.

116. Thus, the putative class of Hourly Technicians is so numerous that the joinder of all class members in one lawsuit is impracticable.

117. The Hourly Technicians are similarly situated in the most relevant respects.

118. Even if their precise job titles, exact duties, and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to their lawfully earned wages.

119. Rather, the Hourly Technicians are held together by TRC's bi-weekly pay scheme and equipment charging policy, which systematically deprive Euson and the Hourly Technicians of their lawfully earned wages on a timely basis.

120. TRC's records reflect the wages each Hourly Technician earned each workweek.

121. TRC's records also reflect it failed to pay the Hourly Technicians their lawfully earned wages within seven days of the time they completed their work.

122. The untimely wages and overtime wages owed to Euson and the other Hourly Technicians can therefore be calculated using the same formula applied to the same records.

123.   Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to TRC's records, and there is no detraction from the common nucleus of liability facts.

124.   Therefore, the issue of damages does not preclude class or collective treatment.

125.   And Euson's experiences are therefore typical of the experiences of the other Hourly Technicians.

126.   Euson has no interest contrary to, or in conflict with, the interests of other Hourly Technicians that would prevent class or collective treatment.

127.   Like each Hourly Technician, Euson has an interest in obtaining the untimely wages, earned wages, and other damages owed to them under the FLSA and New York law.

128.   Euson and his counsel will fairly and adequately represent the Hourly Technicians and their interests.

129.   Indeed, Euson retained counsel with significant experience in handling complex class and collective action litigation.

130.   A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

131.   Absent this class and collective action, many Hourly Technicians will not obtain redress for their injuries, and TRC will reap the unjust benefits of violating the FLSA and New York law.

132.   Further, even if some of the Hourly Technicians could afford individual litigation against TRC, it would be unduly burdensome to the judicial system.

133.   Indeed, the multiplicity of actions would create a hardship for the Hourly Technicians, the Court, and TRC.

134.   Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Technicians' claims.

135.   The questions of law and fact that are common to each Hourly Technicians predominate over any questions affecting solely the individual members.

136.   The common questions of law and fact include:

a.   Whether TRC paid the Hourly Technicians their earned wages on a non-weekly basis;

b.   Whether TRC paid the Hourly Technicians their lawfully earned wages on an untimely basis in violation of the NYLL;

c.   Whether TRC required the Hourly Technicians to work "off the clock" without compensation under its equipment charging policy;

d.   Whether TRC knew, should have known, or had reason to know, the Hourly Technicians were requested, suffered, permitted, or allowed to work "off the clock" without compensation under its equipment charging policy;

e.   Whether TRC failed to pay its Hourly Technicians overtime for all overtime hours worked, including those worked "off the clock," in violation of the FLSA and NYLL;

f.   Whether TRC's decision not to pay the Hourly Technicians their earned wages on a weekly basis was made in good faith;

g.   Whether TRC's decision not to pay the Hourly Technicians overtime for all overtime hours worked, including those worked "off the clock," was made in good faith; and

h.   Whether TRC's violations were willful.

137.    Euson knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

138.    As part of its regular business practices, TRC intentionally, willfully, and repeatedly violated the FLSA and NYLL with respect to Euson and the other Hourly Technicians.

139.    TRC's bi-weekly pay scheme and equipment charging policy deprive Euson and the other Hourly Technicians of lawfully earned wages on a timely basis and overtime wages they are owed under the FLSA and New York law.

140.    There are many similarly situated FLSA Collective Members who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

141.    The Hourly Technicians are known to TRC and can be readily identified through TRC's business and personnel records.

### COUNT I

#### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
#### (FLSA COLLECTIVE MEMBERS)

142.    Euson brings his FLSA claims on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

143.    TRC violated, and is violating, the FLSA by failing to pay Euson and the other FLSA Collective Members overtime wages of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek, including hours worked "off the clock" before and after their shifts.

144.    Throughout the relevant period, TRC has imposed its equipment charging policy on Euson and the other FLSA Collective Members.

145.    But throughout the relevant period, Euson and the other FLSA Collective Members were not paid for the time spent unloading, charging, and loading their equipment before and after their shifts.

146.    Euson and the other FLSA Collective members have been harmed as a direct and proximate result of TRC's unlawful conduct because they have been deprived of wages owed for work that they performed and from which TRC derived a direct and substantial benefit.

147.    TRC knowingly, willfully, and/or in reckless disregard of the FLSA carried out this pattern and practice of failing to pay Euson and the other FLSA Collective Members overtime compensation at the required premium rate for all overtime hours worked.

148.    TRC's failure to pay Euson and the other FLSA Collective Members overtime for all overtime hours worked was neither reasonable, nor was the decision not to pay overtime compensation for all overtime hours worked made in good faith.

149.    Accordingly, Euson and the other FLSA Collective Members are entitled to recover the difference between the overtime wages actually paid and the overtime wages actually earned, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL
### (NEW YORK CLASS MEMBERS)

150.    Euson brings his NYLL overtime claims as a class action on behalf of himself and the other New York Class Members pursuant to FED. R. CIV. P. 23.

151.    TRC's conduct violates the NYLL and its implementing regulations, NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2.

152.    At all relevant times, TRC was subject to the NYLL because TRC was a covered "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

153.    At all relevant times, TRC employed Euson and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

154.    The NYLL requires employers, like TRC, to pay non-exempt employees, including Euson and the other New York Class Members, overtime wages at rates not less than 1.5 times their

regular rates of pay for all hours worked over 40 in a workweek. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

155.    Euson and the other New York Class Members are entitled to overtime pay under the NYLL.

156.    TRC violated, and is violating, the NYLL by employing non-exempt employees (Euson and the other New York Class Members) for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" before and after their shifts. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

157.    TRC's unlawful conduct harmed Euson and the other New York Class Members by depriving them of the premium overtime wages they are owed.

158.    TRC acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

159.    Thus, TRC's NYLL violations with respect to Euson and the other New York Class Members were "willful" within the meaning of Section 198 of the NYLL. *See* NYLL § 198.

160.    Accordingly, TRC owes Euson and the other New York Class Members the difference between the overtime wages actually paid and the overtime wages actually earned, plus interest on those amount, penalties, and attorneys' fees and costs. *See* NYLL §§ 198(4) and 663(1).

<u>COUNT III</u>

FAILURE TO PAY TIMELY WAGES UNDER THE NYLL
(NEW YORK CLASS MEMBERS)

161.    Euson brings his NYLL § 191 claims as a class action on behalf of himself and similarly situated New York Class Members pursuant to FED. R. CIV. P. 23.

162.    Section 191 of the NYLL requires employers, like TRC, to pay manual workers, including Euson and the other New York Class Members, their lawfully earned wages weekly and not

later than seven calendar days after the end of the week in which such wages are earned. *See* NYLL § 191(1)(a).

163.    NYLL § 191's timely payment of wages provisions and its supporting regulations apply to TRC and protect Euson and the other New York Class Members.

164.    TRC violated, and is violating, the NYLL by failing to pay Euson and the other New York Class Members on a timely basis. *See* NYLL § 191(1)(a).

165.    TRC's unlawful conduct harmed Euson and the other New York Class Members by depriving them of the earned wages they are owed.

166.    In violating the NYLL, TRC acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

167.    Thus, TRC's NYLL violations with respect to Euson and the other New York Class Members were "willful" within the meaning of NYLL § 198.

168.    In *Caul v. Petco Animal Supplies, Inc*, Judge Kovner of the Eastern District of New York held the NYLL's liquidated damages provisions are "designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." No. 20-CV-3534 (RPK)(SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied*, No. 20-CV-3534 (RPK)(SJB), 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).

169.    Accordingly, Euson and the other New York Class Members are entitled to recover the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

### JURY DEMAND

170.    Euson demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Euson, individually and on behalf of the other Hourly Technicians, seeks the following relief:

     a.     An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

     b.     An Order certifying a class action pursuant to FED. R. CIV. P. 23;

     c.     An Order appointing Euson and his counsel to represent the interests of the Hourly Technicians;

     d.     An Order finding TRC liable to Euson and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

     e.     An Order finding TRC liable to Euson and the other New York Class Members for their unpaid overtime wages owed under the NYLL plus liquidated damages in an amount equal to their unpaid wages;

     f.     An Order finding TRC liable to Euson and the other New York Class Members for liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

     g.     Judgement awarding Euson and the other Hourly Technicians all unpaid and untimely wages, unpaid overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or NYLL;

     h.     An Order awarding attorneys' fees, costs, and expenses incurred in this action;

i.    Pre- and post-judgment interest at the highest applicable rates; and

j.    Such other and further relief as may be necessary and appropriate.

Dated: September 25, 2024

Respectfully submitted,

**GATTUSO & CIOTOLI, PLLC**

By: _Ryan G. Files_
Ryan G. Files, Esq.
Frank S. Gattuso, Esq.
*Local Counsel*
7030 East Genesee Street
Fayetteville, NY 13066
Phone: 315-314-8000
Fax: 315-446-7521
rfiles@gclawoffice.com
fgattuso@gclawoffice.com

Michael A. Josephson*
Andrew W. Dunlap*
Richard M. Schreiber*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR EUSON AND
THE HOURLY TECHNICIANS**