UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS EUSON JR., individually
and for all others similarly situated,

       Plaintiff,

v.                 5:24-CV-1168
                    (GTS/TWD)
TRC ENGINEERS, LLC,

       Defendant.
_____

APPEARANCES:            OF COUNSEL:

JOSEPHSON DUNLAP, LLP        ANDREW DUNLAP, ESQ.
 Counsel for Plaintiff          MICHAEL JOSEPHSON, ESQ.
11 Greenway Plaza, Suite 3050
Houston, TX 77046

GATTUSO & CIOTOLI, PLLC       FRANK S. GATTUSO, ESQ.
 Co-counsel for Plaintiff         RYAN G. FILES, ESQ.
The White House
7030 East Genesee Street
Fayetteville, NY 13066

BRUCKNER BURCH PLLC        RICHARD J. BURCH, ESQ.
 Co-Counsel for Plaintiff
11 Greenway Plaza, Suite 3025
Houston, TX 77046

LAUREL EMPLOYMENT LAW APC    WILLIAM M. HOGG, ESQ.
 Co-Counsel for Plaintiff
6309 Van Nuys Boulevard, Suite 111
Van Nuys, CA 91411

JACKSON LEWIS P.C.          JONATHAN M. KOZAK, ESQ.
 Counsel for Defendant
44 South Broadway, 14th Floor
White Plains, NY 10601

677 Broadway, 9th Floor         BENJAMIN M. WILKINSON, ESQ.
Albany, NY 12207

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this wage payment action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL" or "N.Y. Lab. L.") filed by Thomas Euson Jr. ("Plaintiff") against TRC Engineers, LLC ("Defendant"), is Defendant's motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 24.)  For the reasons set forth below, Defendant's motion is denied.

**I.      RELEVANT BACKGROUND**

**A.      Plaintiff's Complaint**

In his Complaint, Plaintiff asserts three claims on behalf of himself and all others similarly situated: (1) a claim for failure to pay overtime wages pursuant to the FLSA related to uncompensated time Plaintiff and others similarly situated spent unloading, charging, and loading their specialized work equipment both before and after their shifts; (2) a claim for failure to pay overtime wages pursuant to N.Y. Lab. L. § 190 related to the same uncompensated time; and (3) a claim for failure to pay timely wages pursuant to N.Y. Lab. L. § 191 related to Defendant's action of paying Plaintiff and others similarly situated on a bi-weekly schedule as opposed to weekly as required under New York law for manual workers.  (Dkt. No. 1.)

**B.      Parties' Briefing on Defendant's Motion**

**1.      Defendant's Memorandum of Law**

2

Generally, in its motion, Defendant makes six arguments. (Dkt. No. 24, Attach. 1.) First, Defendant argues that Plaintiff has failed to plausibly state a claim related to overtime compensation pursuant to the FLSA because he has asserted only generalized allegations of approximate daily and weekly hours worked while providing an example from only a single week without specifying whether he worked additional uncompensated hours in those specific weeks when he alleges entitlement to overtime compensation. (*Id.* at 13-14.)

Second, Defendant argues that, if the Court dismisses Plaintiff's FLSA overtime claim, it should decline to exercise supplemental jurisdiction over the NYLL claims, because there is no jurisdiction over that claim under the Class Action Fairness Act ("CAFA") given that the number of individuals in the proposed New York class would be less than 100. (*Id.* at 14-15.)

Third, Defendant argues that, even if the FLSA claim survives this motion, the Court should decline to exercise supplemental jurisdiction over Plaintiff's claim pursuant to N.Y. Lab. L. § 191 because it involves unique questions of New York law that a state court would be better positioned to address and neither party will suffer any prejudice from such course of action. (*Id.* at 15-17.)

Fourth, Defendant argues that Plaintiff's FLSA claim on behalf of persons outside of New York must be dismissed for lack of personal jurisdiction. (*Id.* at 17.)

Fifth, Defendant argues that Plaintiff's claim pursuant to N.Y. Lab. L. § 191 must be dismissed because that law does not provide a private cause of action related to a pay frequency violation. (*Id.* at 17-33.) Specifically, although Defendant acknowledges that this is currently an unresolved issue under New York law, it argues that the New York Court of Appeals is likely to

3

find that no such private right of action exists pursuant to the rationale of a decision from the New York Appellate Division Second Department. (*Id.*)

Sixth, Defendant argues that, alternatively, the Court should stay resolution of a decision on Plaintiff's Section 191 claim pending likely appellate review of the issue of whether Section 191 creates a private right of action. (*Id.* at 33.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in his opposition to Defendant's motion, Plaintiff makes five arguments. (Dkt. No. 28.) First, Plaintiff argues that his Complaint plausibly alleges an FLSA claim because he has alleged that he worked approximately 10 to 12 hours per day for five days per week (for a total of 50 to 60 hours per week) and that he was required to work an extra five to ten minutes off the clock both before and after his shift every work day, and he also provided a specific example of a two-week period that showed 80 hours of regular time and 31.5 hours of overtime. (*Id.* at 10-11.)

Second, Plaintiff argues that, regardless of how the Court rules on Plaintiff's FLSA claim, it should exercise supplemental jurisdiction over Plaintiff's NYLL claims because (a) they are related to the FLSA claim, and (b) the standards under the NYLL are similar to those applied to FLSA claims and there is no reason the Court would be at a disadvantage in applying New York law. (*Id.* at 12-13.)

Third, Plaintiff argues that Defendant's attempt to narrow the FLSA class is premature because there is only one opt-in plaintiff present at this stage of the litigation, and that the attempt is also unsupported because it is not clearly established in the law that such action is warranted. (*Id.* at 13-14)

4

Fourth, Plaintiff argues that N.Y. Lab. L. § 191 provides a private right of action for underpayment because, despite Defendant's assurances to the Court, the vast majority of federal courts that have considered this issue (i.e., all but one) have found that the New York Court of Appeals is likely to find that such a private right exists. (*Id.* at 14-19.)

Fifth, Plaintiff argues that a stay is not merited here and that there is no requirement to stay the case merely because other courts (even higher courts) might currently be considering the same issue. (*Id.* at 19-20.)

### 3. Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant makes five arguments. (Dkt. No. 29.) First, Defendant argues that Plaintiff has failed to adequately plead an FLSA overtime claim because his allegations are simply conclusory in that he has not provided any details regarding when he started or finished work on any particular day, whether or how he recorded or reported his time worked, and whether the alleged off-the-clock hours were or were not included in his alleged daily or weekly hours worked. (*Id.* at 6-7.)

Second, Defendant argues that the Court should decline to exercise supplemental jurisdiction because the claim under N.Y. Lab. L. § 191 raises a uniquely state law issue that is the subject of a current split-of-authority in New York courts and is unrelated factually to the overtime claim he raises under the FLSA. (*Id.* at 7-8.)

Third, Defendant argues that the FLSA claim on behalf of persons outside of New York should be dismissed because the prevailing legal authority supports such a course of action. (*Id.* at 8.)

5

Fourth, Defendant argues that N.Y. Lab. L. § 191 does not provide a private right of action because the history and other factors related to the applicable statutory system suggest that conclusion. (*Id.* at 9-13.)

Fifth, Defendant argues that, in the alterative to deciding the Section 191 issue, the Court should stay proceedings pending appellate review by either the New York Court of Appeals or the Second Circuit because there will be no prejudice to Plaintiff by doing so and it is in the interests of judicial economy. (*Id.* at 13-15.)

## II.     GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

7

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

      As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

      Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

8

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.")

## III. ANALYSIS

### A. Whether Plaintiff Has Sufficiently Pleaded His Claim Pursuant to the FLSA

After careful consideration, the Court answers the above question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law. *See, supra,* Part I.B.2 of this Decision and Order. To those reasons, the Courts adds the following analysis.

"'In order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (quoting *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 114 [2d Cir. 2013]). "The pleading standard is satisfied . . . if the plaintiffs allege that their regularly scheduled workweek for a given period of time included more than forty hours of work, so that they were eligible for overtime during every week in which they worked that regular schedule." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 117 (2d Cir. 2023).

Plaintiff here alleged specifically that he worked 10 or 12 hours each day for five days each week, for a total of 50 to 60 hours per week. (Dkt. No. 1, at ¶ 50.) Plaintiff has therefore alleged, with fairly specific numbers, that he worked more than 40 hours every week. Contrary

---

[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

to Defendant's assertion, this is not a case where a plaintiff has alleged in a generic fashion that he worked more than 40 hours per week without any sort of case-specific factual details. Plaintiff has also provided a specific example of one pay period, which shows that he worked 80 regular hours and 22 overtime hours in that bi-weekly period, which generally supports Plaintiff's allegation of his typical work schedule (as this averages to 51 hours per week). (Dkt. No. 1, at ¶ 51.) He additionally alleges that he was not compensated for additional overtime hours (totaling five-to-ten minutes before his shift and five-to-ten minutes after his shift) when, each workday, he had to load or unload the specialized equipment used to do his job to charge it overnight. (Dkt. No. 1, at ¶¶ 70-72.) Plaintiff therefore has not only plausibly alleged that he worked more than forty hours every week, but also that he worked uncompensated overtime hours in excess of those forty hours during the weeks he worked more than forty hours. This is all that is required under the pleading standards for an FLSA overtime claim.

      Defendant attempts to muddy the fairly clear waters in this case by speculating that these numbers might include breaks or even the alleged uncompensated overtime itself. The Court rejects such attempts to create ambiguities in Plaintiff's pleading where none exist. Plaintiff specifically alleges that he "worked" those hours, so the Court will assume (because no reason exists to doubt that assumption and because all inferences must be drawn in favor of Plaintiff at this stage) that those 10 to 12 hours are, in fact, hours he worked—not breaks or lunch periods or any other time that would not count towards the 40-hour total. Moreover, the example bi-weekly pay period information Plaintiff provided shows 80 regular hours and 22 overtime hours. (Dkt. No. 1, at ¶ 51.) This example pay period is both in line with Plaintiff's allegations about his workweek generally and also shows that those alleged hours were, in fact, hours that counted

towards the 40-hour total. Moreover, given that these numbers align, there is simply no reason to believe that Plaintiff has included the alleged uncompensated pre- and post-work amounts within that range of the hours in any way that is material to the outcome here because such hours, being uncompensated, would not be appearing on his pay documents.

Further, given that Plaintiff has alleged that he worked in excess of 40 hours every week, and that he was required to engage in the alleged uncompensated pre- and post-shift work *every day* on which he worked, he has plausibly alleged that the uncompensated time occurred during weeks in which he worked more than 40 hours. *Cf. Mizzero v. Albany Med. Health Sys.*, 23-CV-0548, 2024 WL 2078628, at *6 (N.D.N.Y. May 9, 2024) (Suddaby, J.) (noting that "merely showing that [the plaintiff] worked more than 40 hours in a given week is not sufficient to plausibly state an FLSA claim in this case; she must additionally provide some allegations to plausibly suggest that the alleged uncompensated time also occurred during a given week when she worked more than 40 hours") (citing *Lundy*, 711 F.3d at 114).

For the above reasons, the Court finds that Plaintiff has sufficiently pleaded an overtime claim pursuant to the FLSA. Defendant's motion is denied as to this claim.

> **B.     Whether the Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's Claims Brought Pursuant to New York Law**

After careful consideration, the Court answers the above question in the negative. As already discussed above, the Court has found that Plaintiff has sufficiently pleaded a claim pursuant to the FLSA and thus federal question jurisdiction remains here. To the extent that Defendant argues that the Court should nevertheless decline to exercise supplemental jurisdiction over Plaintiff's NYLL claims because they are not related to the federal claim, or because they are more appropriately considered by a state court, the Court rejects that argument. Plaintiff's

overtime claim under the NYLL is based on the same factual premise as the FLSA overtime claim, and therefore those two claims should clearly be decided in the same action.  As to Plaintiff's NYLL claim regarding underpayment, this claim is not unrelated to the other claims asserted here; and, although the Court recognizes that it rests on a matter of state law that the parties argue is still somewhat unsettled, such fact does not alone deprive the Court of the ability to hear it.  In fact, both parties cite and rely upon instances in which courts within the Second Circuit addressed similar claims brought in federal court pursuant to the same New York law.  Because the Court is capable of assessing the relevant New York statutory and case law, it finds that exercising supplemental jurisdiction over that claim is prudent and appropriate.

    **C.**    **Whether the Court Should Dismiss Plaintiff's FLSA Claim Brought On Behalf of Persons Employed Outside New York for Lack of Personal Jurisdiction**

After careful consideration, the Court answers the above question in the negative, but rejects it only without prejudice to Defendant's renewal of this argument at a later date.  As Plaintiff notes, there have been no opt-in collective members from outside of New York—in fact, there have been no opt-in members other than Plaintiff himself.  Because it is not yet clear that there even will be any opt-in members who worked for Defendant outside the state of New York and were subjected to similar alleged violations, this issue would be more appropriately considered when such questions regarding the Court's personal jurisdiction over any out-of-state collective members actually arise.

    **D.**    **Whether the Court Should Dismiss Plaintiff's Claim Brought Pursuant to N.Y. Lab. L. § 191**

After careful consideration, the Court answers the above question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. *See, supra,* Part I.B.2 of this Decision and Order. To those reasons, the Court adds the following analysis.

Defendant does not argue that Plaintiff has failed to allege facts that would sufficiently state a claim that Defendant violated the pay frequency requirement outlined in N.Y. Lab. L. § 191(1)(a), but rather that New York law does not contain a private right of action whereby an employee can sue for such a violation. This argument encompasses most of the pages contained in Defendant's memoranda as Defendant attempts to convince the Court to adopt a position that has been almost universally disfavored by federal courts within the Second Circuit. However, the Court finds these arguments unpersuasive and, more importantly, recent amendments to the New York Labor Law appear to have resolved the contentious legal issue surrounding whether N.Y. Lab. L. § 198(1-a) creates a private right of action for the enforcement of violations of N.Y. Lab. L. § 191(1)(a).

Section 191(1)(a) of the NY Labor Law states that an employer shall pay a manual worker "weekly and not later than seven calendar days after the end of the week in which the wages are earned," with the only exceptions being (a) if the employer is authorized by the Commissioner to do otherwise, or (b) the employer is a "non-profitmaking organization." N.Y. Lab. L. § 191(1)(a). The statute further specifies that "[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section." N.Y. Lab. L. § 191(2).

Section 198 of the New York Labor Law, which relates to costs and remedies for violations of Article 6 (of which Section 191 is a part), states that

14

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the fully amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer provides a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due. . . .

N.Y. Lab. L. § 198(1-a).

In *Vega v. CM and Assocs. Constr. Mgmt., LLC*, the New York Appellate Division, First Department concluded that N.Y. Lab. L § 198 provided a private right of action for a violation of N.Y. Lab. L. § 191(1)(a), finding that (a) Section 198 permits an individual to bring suits for "wage claims" related to violations of Article 6, and the late payment of wages in violation of Section 191 (which is part of Article 6) constitutes a wage claim, (b) the term "underpayment" includes where an employer violates the payment frequency requirements of Section 191 because it results in a payment of less than what was required under the law, (c) the analogous FLSA provision on this issue supports that failure to pay wages on time in accordance with the law should permit an award of liquidated damages, and (d) even if Section 198(1-a) does not provide an express private right of action (although the court believed that it did), such remedy is implied because the plaintiff manual workers were "one of the class for whose particular benefit the statute was enacted," recognition of a private right would promote the legislative purpose of the statute, and creation of that right would be consistent with the legislative scheme. *Vega*, 175 A.D. 3d 1144, 1145-47 (N.Y. App. Div. 1st Dept. 2019).

By contrast, in *Grant v. Global Aircraft Dispatch, Inc.*, the New York Appellate Division, Second Department found that no private right of action existed in Section 198(1-a) to

15

enforce a failure to pay timely wages under Section 191. *Grant*, 223 A.D.3d 712 (N.Y. App. Div. 2d Dept. 2024). Specifically, the Second Department in *Grant* disagreed with the First Department in *Vega* that the failure to pay timely wages constituted an "underpayment," and noted that the plain language of Section 198(1-a) limits the private right of action to claims wherein an underpayment exists; therefore, since no underpayment occurs where the wages are merely paid bi-weekly as opposed to weekly, such claim is not subject to the private right of action in Section 198(1-a). *Grant*, 223 A.D.3d at 715-16.

Although Defendant argues that the New York Court of Appeals would be more likely to agree with the conclusion of *Grant* than that of *Vega*, Plaintiff is correct that such an argument is not supported by how the vast majority of other district courts that have assessed the issue have so concluded. *See, e.g.*, *Covington v. Childtime Childcare, Inc.*, 23-CV-0710, 2024 WL 2923702, at *4-5 (N.D.N.Y. June 10, 2024) (Sannes, C.J.) ("District courts sitting in this Circuit have had the opportunity to weigh-in on *Grant* and address the split in authority—all but one have continued to follow *Vega* as the predominate authority and predict that the Court of Appeals is more likely to adopt the First Department's conclusion. . . . The Court is persuaded by the reasoning of, and the conclusion reached by, the majority of its sister courts and sees no reason to depart from such rulings.") (omitting citations to seven cases following *Vega*); *Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 347-351 (S.D.N.Y. 2024) (discussing both *Vega* and *Grant* when determining that a plaintiff may assert a cause of action for a violation of Section 191); *Charles v. United States of Aritzia, Inc.*, 23-CV-09389, 2024 WL 4167502, at *6 (S.D.N.Y. Sept. 12, 2024) ("The clear weight of authority among district courts in the Second Circuit is aligned with the conclusion in *Vega* that there is an implied private right of action to

16

enforce Section 191. The Court agrees that *Vega*'s analysis of the three *Sheehy* factors is persuasive. Accordingly, Defendant's motion to dismiss on this basis is denied as well."); *Lange v. Empire Holdings and Invs., LLC*, 23-CV-8052, 2025 WL 1906700, at *15 (S.D.N.Y. July 10, 2025) (agreeing with the reasoning of *Vega* over *Grant*); *Chisolm-Lucas v. Am. Airlines, Inc.*, 23-CV-5177, -- F. Supp. 3d --, 2025 WL 2229840, at *4, n.2 (E.D.N.Y. Aug. 5, 2025) (assuming without deciding that a private right of action existed, but noting that "the majority of federal district courts" had agreed with *Vega* rather than *Grant*); *see also Mabe v. Wal-Mart Assocs., Inc.*, 2022 WL 874311, at *3 (N.D.N.Y. Mar. 24, 2022) (McAvoy, J.) (noting that every court decision examined that post-dated the issuance of *Vega* had accepted the conclusion of *Vega*, although this was notably prior to the decision in *Grant*). Indeed, only one district judge has agreed with *Grant*. *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, 22-CV-6415, 2024 WL 4652251, at *1-2 (W.D.N.Y. Nov. 1, 2024); *Galante v. Watermark Servs. IV, LLC*, 722 F. Supp. 3d 170, 181-87 (W.D.N.Y. Mar. 7, 2024).

Based on the Court's analysis of the relevant case law and the materials submitted by Defendant that are subject to judicial notice on this motion to dismiss, the Court joins the vast majority of other federal district courts within the Second Circuit in finding that New York law creates a private right of action (whether it is express or implied) for a violation of pay frequency under Section 191(1)(a).

In any event, recent amendments to the New York Labor Law appear to have resolved the contentious legal issue surrounding whether N.Y. Lab. L. § 198(1-a) creates a private right of action for the enforcement of violations of N.Y. Lab. L. § 191(1)(a). N.Y. Legis. 56, S. 3006-C (approved May 6, 2025). More specifically, the provision now explicitly addresses Section

191(1)(a) in relation to the damages permitted "[i]n any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails," stating that "[n]otwithstanding the provisions of this subdivision, liquidated damages shall not be applicable to violations of paragraph a of subdivision one of section one hundred ninety-one of this article where the employer paid the employee wages on a regular payday, no less frequently than semi-monthly." N.Y. Lab. L. § 198(1-a). Rather, those violations are subject to damages to the effect of

>    (i)    no more than one hundred percent of the lost interest found to be due for the delayed payment of wages calculated using a daily interest rate for each day payment is late based on the annual rate of interest then in effect, as prescribed by the superintendent of financial services pursuant to section fourteen-a of the banking law for the employer's first violation; or
>
>    (ii)   for conduct occurring after the effective date of this paragraph, liquidated damages equal to one hundred percent of the total amount of wages found to be due in violation of paragraph a of subdivision one of section one hundred ninety-one of this article for any employer who, after the effective date of this paragraph, has been subject to one or more previous findings and orders for violation of paragraph a of subdivision one of section one hundred ninety-one of this article for which no proceeding for administrative or judicial review as provided in this chapter is pending and the time for initiation of such proceeding shall have expired and related to employees performing the same work.

N.Y. Lab. L. § 198(1-a).

The Court also notes that the session law enacting these amendments states that they "shall take effect immediately and shall apply to causes of action pending or commenced on or after such date." N.Y. Legis. 56, S. 3006-C, Part U, § 2. As a result, these amendments appear

18

to apply to Plaintiff's Complaint, and appear to resolve the legal question here by both explicitly including claims brought pursuant to Section 191(1)(a) within the scope of claims that can be brought in an "action instituted in the courts upon a wage claim by an employee or the commissioner" and by outlining the appropriate standard and scope of liquidated damages allowed for such a violation. *See Garcia v. New Force Constr. Corp.*, 23-CV-2336 2025 WL 2015158, at *14-15 (E.D.N.Y. July 18, 2025) (Report-Recommendation) (noting that, "as amended, NYLL § 198[1-a] now explicitly states that it provides a private cause of action for violations of Section 191(1)(a), although 'liquidated damages shall not be applicable to violations . . . where the employer paid the employee wages on a regular payday, no less frequently than semi-monthly'"); *accord Lopez v. J&L Sky Contrs. Corp.*, 24-CV-7661, 2025 WL 1859690, at *17 (E.D.N.Y. July 7, 2025) (Report-Recommendation); *see also Garzon v. Building Servs. Inc.*, 24-CV-5429, 2025 WL 1871171, at *10 (S.D.N.Y. July 2, 2025), Report-Recommendation adopted by 2025 WL 2062741 (S.D.N.Y. Jul. 23, 2025) (noting that the May 2025 amendments to Section 198[1-a] "reinforce" the conclusion that the statute creates a private right of action). Indeed, there would seem to be little reason to specify the circumstances under which liquidated damages could be allowed for a pay frequency claim if no private right of action to pursue such a claim exists in the first place. These amendments therefore bolster *Vega's* conclusion that a private right of action does exist for Section 191(1)(a) claims. Because these amendments appear to apply here and override any split between the various courts related to how the previous version of Section 198(1-a) should be interpreted, the Court finds that Section 198(1-a) does indeed provide for a private right of action related to a payment frequency

violation of Section 191(1)(a), and therefore denies Defendant's motion to dismiss on this point for this alternative reason.

      **ACCORDINGLY**, it is

      **ORDERED** that Defendant's motion to dismiss (Dkt. No. 24) is **DENIED**.

Dated: September 8, 2025
       Syracuse, New York

_____
Glenn T. Suddaby
U.S. District Judge